beloved husband, Oliver T. Nanny, and I hereby·nominate and appoint him my executor to this my last will and testament." And that plaintiff had since married Sarah Nanny. That doubts had arisen as to the validity and meaning of said agreement and deed, and the meaning of said will, because of which said Amzi L. Fancher and the other parties to said agreement had failed to perform the same, and denied the rights of the plaintiff thereunder. He asked judgment that it be determined that he was the owner of all the rights and interests which said Juliette Nanny had at the time of her death in the land or in the proceeds of the sale thereof; that, on the death of the widow, defendant Amzi L. Fancher became entitled to a further deed of one-third of the property; and that a specific performance of the contract be decreed. Besides the purchaser, Amzi L. Fancher, all the vendors surviving, and Charles Thompson, individually and as administrator of Susan Thompson, deceased, and Sarah Nanny, wife of plaintiff, were made defendants. The surviving vendors demurred to the complaint, on the grounds that all the vendors should be parties plaintiff; that the executor of Juliette Nanny was a necessary party; that plaintiff had not legal capacity to sue, as an individual, the right of action, if any, being in the executor of Juliette Nanny; and that the complaint did not state facts sufficient to constitute a cause of action. From an interlocutory judgment overruling the demurrer, said defendants appeal.

Argued before DYKMAN and PRATT, JJ.

*M. N. Kane*, for appellant Mary A. Fancher. *E. A. Brewster*, for appellants Sarah A. Wilson and others. *Bacon & Merritt*, for respondent.

DYKMAN, J. This is an appeal from a judgment in favor of the plaintiff upon a demurrer to the complaint, and we think the judgment must be affirmed. The action is substantially for a specific performance of a written contract, and all persons interested are made parties. There is no difficulty in administering full relief to all, and it is a case where equity will decree a performance of the agreement. We think, also, the plaintiff may maintain the action.

---

ALLEN *v.* McCONIHE.

*(Supreme Court, General Term, Third Department.* December 12, 1890.)

1. FACTORS AND BROKERS—DEALING IN STOCK—STATEMENT OF ACCOUNT.
   Orders to brokers for purchase and sale of stocks were transmitted by them for execution to their agents in another city. This was understood by the principal, but neither he nor the brokers had any actual knowledge that such stocks were in fact so bought and sold, but both parties relied on the brokers' agents. The principal could have obtained any of the stocks from the brokers at any time, by paying what was due to them thereon. *Held*, that statements of such transactions, rendered to the principal by his brokers from time to time, and retained by him without objection, were to be taken as true, and were binding upon him as to the charges therein for interest, as well as principal.

2. SAME—FAILURE TO SELL—DECLINE IN PRICE—MEASURE OF DAMAGES.
   An order by a principal to his brokers to sell at a certain price stock held by them for him, for which they had not been fully paid by him, was not executed by them, because they expected the stock would reach a higher price; but it declined, and remained below the price fixed in the order, until it was sold by the brokers' agents at a much lower price. *Held*, that the brokers were liable for failing to obey the order; and the measure of damages was the difference between the price named in the order and that for which the stock was sold.

Appeal from judgment entered on report of referee.

Action by Frederick P. Allen, as assignee of Ogden, Calder & Co., against Isaac McConihe, for a balance of an account, running through several years, of purchases and sales by said Ogden, Calder & Co. for defendant as his brokers on margins. Plaintiff appeals from so much of a judgment in his favor as allowed a counter-claim of defendant. The following opinion was rendered

upon the trial of the action, by MATTHEW HALE, R.: "In the absence of any proof of fraud or mistake, I think that the statements rendered to defendant by the assignors of the plaintiff, and retained by defendant without objection, are to be taken as true. Defendant's testimony shows clearly that he understood in a general way the manner in which Ogden, Calder & Co. transacted their business. He understood that the stocks which he ordered were not purchased directly by them, but through their agents, Work, Strong & Co., in New York. Neither he nor Ogden, Calder & Co. had any actual knowledge that the stocks reported to be bought and sold by Work, Strong & Co. were actually so bought and sold. Both understood that for the truth of these statements reliance was placed upon Work, Strong & Co. This acquiescence on the part of the defendant covers, I think, the charges for interest, as well as those for principal. *Knickerbocker* v. *Gould*, 115 N. Y. 533, 22 N. E. Rep. 573. It fairly appears, I think, from the evidence that defendant could have obtained any of the stocks from Ogden, Calder & Co. at any time before their assignment, by paying up what was due thereon. I hold therefore that the plaintiff has established the full amount of his claim, and that he would be entitled to recover the entire amount claimed in the complaint, but for the matters which have been proved by way of counter-claim. I do not see, however, that the defendant has proved that he was damaged by any unlawful or unauthorized sale of stock, if there was any such unlawful or unauthorized sale. The only item as to which defendant is entitled to recover upon his counter-claim is, in my judgment, the failure of Ogden, Calder & Co. to sell the Manhattan stock at 111. The order to sell was peremptory. If Ogden, Calder & Co. chose to disobey it, in the hope that the stock would go to a higher figure, this was at their own risk. They were not requested to exercise any such discretion by defendant. Conceding that their intention in failing to obey defendant's order was to benefit defendant, still it was a voluntary act on their part, and their good intentions cannot protect them from liability for the effect of their failure to obey the orders of their principal. It was part of their implied contract to obey such orders. *Markham* v. *Jaudon*, 41 N. Y. 235, 239. The only question under this head is as to the measure of damages. The stock did not again reach 111 after defendant learned of his brokers' failure to obey orders, until it was sold by the plaintiff, Work, Strong & Co., at 97. I do not think the rule of damages laid down in *Baker* v. *Drake*, 53 N. Y. 211, has any application to this case. That rule related solely to the case of an unlawful conversion of the stock by sale. In that case it was held that where the customer was advised of an unauthorized sale of stocks that, if he desired further to prosecute the adventure, he had the right to disaffirm the sale, and require the broker to replace the stock, and, upon a failure or refusal to do this, his remedy was to replace it himself; and that the advance in the market price from the time of the sale up to a reasonable time to replace it after notice of sale afforded a complete indemnity, and was the proper measure of damages. But this is a very different case. Defendant had not fully paid for his stock. Ogden, Calder & Co. held it not only as his agents, but as pledgees. If they had sold as they were ordered to sell, defendant would have at once had the benefit of his order, and would have been entitled to credit in his account with Ogden, Calder & Co., with the proceeds of the sale. When he learned that his brokers had failed to obey orders, I do not think he was obliged to take any further step to secure his rights. He told his brokers, in substance, that he was dissatisfied, and that he did not acquiesce in their omission to obey his order. The stock was then below 111, and continued falling until it was sold without his consent at 97. If he had requested them to sell at a lower figure, that might be construed as a waiver of his previous order, which he had never rescinded. Ogden, Calder & Co. knew that they had violated the orders of their principal. They must be presumed to have known that they had incurred a liability

thereby. They were bound to credit their principal with the value of the stock at the price at which they were ordered to sell, as of the time when they could have sold it at that price. The stock after that was, in my judgment, carried by them at their own risk. Defendant had neither possession nor control of it. Perhaps they thought the stock would go up again, and that they could make themselves good; but, whatever they may have thought or expected, the order to them not having been rescinded, and their omission to obey the principal's orders not having been ratified or condoned by him, any loss that resulted was their loss, and not defendant's. The amount of defendant's actual damage was the difference between the stock at 111, and the price for which the stock was afterwards sold, (97,) and which defendant has received by credit in his account. This difference is $4,200, for which, with interest from August 16, 1887, the day on which Ogden, Calder & Co. could have sold the stock at 111, defendant is entitled to be credited in this action. I have therefore decided that plaintiff is entitled to recover the amount of his claim, $8,841.76, with interest from January 31, 1888, after deducting therefrom the said sum of $4,200, with interest from August 16, 1887, making the amount of the recovery at this date, (June 27, 1890,) $5,193.79."

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Albert Smith,* for appellant. *Long & Maxwell,* (*J. K. Long,* of counsel,) for respondent.

PER CURIAM. Judgment affirmed on opinion of referee.

---

CAPITAL CITY BANK *v.* PARENT *et al.*

(*Supreme Court, General Term, Fourth Department.* November, 1890.)

1. CREDITORS' BILL—WHEN LIES—ALTERNATIVE RELIEF.
   A creditors' bill cannot be based on a judgment recovered in an action wherein the only service was by publication, on the ground of non-residence, for, under Code Civil Proc. N. Y. § 707, such judgment, and the execution thereon, "can be enforced only against the property which has been levied on by virtue of the warrant of attachment;" whereas, under section 1871, it is a condition precedent to the maintenance of such bill that an execution against the property generally of the debtor shall have been returned unsatisfied.

2. SAME.
   Such action cannot be maintained on the theory that it is in aid of the attachment, where its object is to set aside as fraudulent the transfer of a draft by the debtor, while that attachment was levied, not on the draft, but on the deposit in bank with which the debtor had purchased such draft.

3. SAME.
   Nor can plaintiff stand as a simple creditor where it is shown that he had released the debtor absolutely, and such release has not been avoided.

4. SAME—FRAUD OF DEFENDANT.
   Plaintiff in such action, having elected to sue on the debt, is not entitled to relief, on the ground that the moneys which make up the debt, and which were obtained from him under false pretenses, are identical with the moneys used to purchase the draft.

Appeal from special term, Onondaga county.

Action by the Capital City Bank against Adolphus Parent and others. From a judgment for defendant Parent entered on the dismissal of the complaint at the trial, plaintiff appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Goodelle & Nottingham,* for appellant. *Hiscock, Doheny & Hiscock,* for respondents.

MERWIN, J. This is an action in the nature of a creditors' bill. It is alleged in the complaint that the plaintiff on the 22d October, 1888, recovered in the supreme court a judgment against the defendant Charles C. Nelson, *alias* W. G. Lee, for the sum of $6,135.60, which was on that day docketed,